<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAULINE THOMAS,<br><br>        Plaintiff,<br><br>v.<br><br>JENNY CRAIG, INC.,<br><br>        Defendant. | Civil Action No.: 10-2287 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Jenny Craig, Inc.'s motion to compel arbitration. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion is granted.

<u>BACKGROUND</u>

The relevant facts are as follows: Plaintiff, Pauline Thomas, first began working for Jenny Craig, Inc. in New York as a weight loss counselor in July 1997. (Thomas Cert., ¶ 4). In July 2004, Plaintiff was invited to apply for the position of Center Director of the Jenny Craig Center in Secaucus, New Jersey (hereinafter referred to as the "Center").(<u>Id.</u>, ¶¶ 5, 6). Plaintiff applied for the position and the position was offered to her three to four days later. (<u>Id.</u>).

In connection with the job offer, Jenny Craig provided Plaintiff with an Offer Letter memorializing the terms and conditions of her employment for this position. (Guglielmo Aff., ¶ 4).

Paragraph H of the Letter Offer states the following:

> Alternative Dispute Resolution: You and the Company agree that if either party alleges a violation of the terms of this offer letter, or any other disagreements or disputes arise in connection with this letter or your employment or termination of your employment, any such disputes shall be settled exclusively by arbitration in the City of San Diego by one or more experienced labor and employment law arbitrator(s) licensed to practice law in California and selected in accordance with the commercial arbitration rules of the American Arbitration Association.  This arbitration agreement includes, but is not limited to, any claim based on state or federal laws regarding: age, sex, pregnancy, race, color, national origin, marital status, religion, veteran status, disability, sexual orientation, medical condition, or other anti-discrimination or no-retaliation laws, including, without limitation, Title VII, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Equal Pay Act, and the California Fair Employment and Housing Act, all as amended. <u>You and the Company understand and agree that they are both waiving any right to a jury trial based on these claims</u>. The arbitrator(s) cannot have the power to modify any of the provisions of this offer letter. The arbitrator(s) decision shall be final and binding upon both you and the Company and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

(Guglielmo Aff., Ex. A) (emphasis in original).

Plaintiff certifies that she was not given an opportunity to negotiate the terms of her Offer Letter, nor was she given an opportunity to review the papers before she signed them. (Thomas Cert., ¶¶ 7, 8).  Plaintiff ultimately signed the Offer Letter and was promoted to the Center Director position in July 2004. (Guglielmo Aff., ¶ 6).  Plaintiff reported for work at the Center on July 21, 2004. (Thomas Cert., ¶ 10).

Plaintiff's employment with Jenny Craig was terminated in April 2008 for purportedly engaging in "offensive" behavior towards other employees and/or third parties. (Guglielmo Aff., ¶ 9; Ex. B).

In light of the foregoing, Plaintiff filed a Complaint against Jenny Craig in the Superior Court of New Jersey, Law Division, Hudson County in April 2010. Plaintiff's Complaint sets forth the following claims for relief: (1) gender discrimination in violation of the New Jersey Law Against Discrimination, (2) retaliation in violation of the New Jersey Law Against Discrimination, (3) violation of the New Jersey Wiretapping and Electronic Surveillance Control Act, (4) violation of New Jersey public policy, (5) invasion of privacy, and (6) age discrimination in violation of the New Jersey Law Against Discrimination.

On May 6, 2010, Jenny Craig filed a Notice of Removal with this Court.[1] On May 31, 2010, Jenny Craig filed the instant motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, on the basis of Paragraph H of the duly executed Letter Offer.

## LEGAL STANDARD

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." E.M. Diagnostics Sys., Inc. v. Local 169, Int'l Brotherhood of Teamsters, Chauffeurs, Warehouseman & Helpers of America, 812 F.2d 91, 94 (3d Cir. 1987) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). The Federal Arbitration Act (the "FAA" or the "Act"), applies to arbitration clauses contained in contracts involving matters of interstate commerce. See 9 U.S.C. § 2; Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). When a party whose claims are subject to the Act refuses to arbitrate the same, the district court must decipher whether the claims are arbitrable. Medtronic Ave, Inc. v. Advanced Cardiovascular Sys.,

---

[1] This Court's jurisdiction over the instant matter is premised on 28 U.S.C. § 1332(a).

Inc., 247 F.3d 44, 54 (3d Cir. 2001) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." E.M. Diagnostics, 812 F.2d at 95 (quotation and citation omitted) (emphasis added); see Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

Federal policy favors arbitration and "thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration." Medtronic, 247 F.3d at 55 (citing Moses H. Cone, 460 U.S. at 24-25); Zimmerman, 783 F. Supp. at 868. The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an arbitration clause. See Medtronic, 247 F.3d at 55; Zimmerman, 783 F. Supp. at 868 ("There is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). However, "[i]f there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury." Par-Knit, 636 F.2d at 54.

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement. See Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (3d Cir. 2009); Salvadori v. Option One Mtg. Corp., 420 F. Supp. 2d 349, 356 (D.N.J. 2006). In doing so, the Court utilizes the summary judgment standard of Federal

Rule of Civil Procedure 56(c). See Par-Knit, 636 F.2d at 54 n. 9. A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(c).

Thus, the Court must first decide whether there is a genuine issue of material fact concerning the existence of a valid arbitration agreement. Par-Knit, 636 F.2d at 54. When making such a determination, the court must give the party opposing arbitration "the benefit of all reasonable doubts and inference that may arise." Id. In deciding whether particular claims fall within the scope of an arbitration clause, the Court must "focus . . . on the 'factual allegations in the complaint rather than the legal causes of action asserted.'" Zimmerman, 783 F. Supp. at 869 (quoting Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987)). Upon determining that the claims fall within the scope of the arbitration agreement, the Court must refer the matter to the arbitrator – without considering the merits of the claims. Id. With this framework in mind, the Court turns now to Defendant's motion.

## DISCUSSION

Defendant's motion to compel arbitration seeks to enforce the arbitration provision contained in Paragraph H of the Letter Offer signed by both parties. As previously stated, Paragraph H of the Letter Offer provides, in pertinent part, that both parties "agree that if . . . disputes arise in connection with . . . your employment or termination of your employment, any such disputes shall be settled exclusively by arbitration in the City of San Diego . . . ." (Guglielmo Aff., Ex. A). Paragraph H goes on to clarify that "[t]his arbitration agreement includes, but is not limited to, any claim based on state or federal laws regarding: age, sex, pregnancy, race, color, national origin,

marital status, religion, veteran status, disability, sexual orientation, medical condition, or other anti-discrimination or no-retaliation laws, including, without limitation, Title VII, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Equal Pay Act, and the California Fair Employment and Housing Act, all as amended." (Id.).  Lastly, Paragraph H contains the italicized provision "[y]ou and the Company understand and agree that they are both waiving any right to a jury trial based on these claims." (Id.).

Defendant argues that each of Plaintiff's claims arise out of the termination of her employment and are, therefore, encompassed by the alternative dispute resolution provision contained in Paragraph H of the Offer Letter which she signed and agreed to. "Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).

**I.    Agreement to Arbitrate**

Defendants maintain that Plaintiff has knowingly and voluntarily waived her right to sue in favor of arbitration. In New Jersey,[2] there is a general policy in favor of arbitration of disputes. See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001). An agreement to arbitrate statutory employment claims is binding on the employee when he or she has knowingly waived the right to a court hearing and has clearly agreed to the terms of the agreement.

---

[2] State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Kirleis, 560 F.3d at 160; Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).  Plaintiff and Jenny Craig agree that New Jersey law applies here.

See, e.g., Leodori v. CIGNA Corp., 175 N.J. 293, 814 A.2d 1098, 1104 (2003) ("[A] waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."), cert. denied, 540 U.S. 938, 124 S.Ct. 74, 157 L.Ed.2d 250 (2003). Furthermore, there must be an unambiguous writing that clearly establishes that an employee intended to waive the right to sue. Garfinkel, 773 A.2d at 670. As the New Jersey Supreme Court has observed:

> In respect of specific contractual language, [a] clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue. As we have stressed in other contexts, a party's waiver of statutory rights must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.

Id. at 670 (internal quotations and citations omitted). Accordingly, the Court must be convinced that a claimant "actually intended to waive his statutory rights." Id. at 673.

### A.    Whether the Parties Agreed to Arbitrate

Plaintiff argues that "she did not subjectively understand that she was being asked to waive important statutory rights." (Pl. Opp'n Br. at 11). In support of this position, Plaintiff certifies, in pertinent part, to the following: (1) she was not given an opportunity to negotiate any of the terms of the Letter Offer before signing (Thomas Decl., ¶ 7), (2) she was not given time to review the papers before signing them (Id., ¶ 8), (3) no one explained to her that by signing the Offer Letter she would (or could) be signing away any of her legal rights (Id., ¶ 9), (4) she is not "experienced" in matters involving contracts, (Id., ¶ 10), and (5) she had no "legal training" in school (Id., ¶ 12).

"It will not do for a [person] to enter into a contract, and, when called upon to respond to its

obligations, to say that he did not read it when he signed it, or did not know what it contained." Upton v. Tribilcock, 91 U.S. 45, 50 (1875) (emphasis added); see also Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 673 F. Supp. 2d 313, 328 (D.N.J. 2009) ("Walking blindfolded through one's business affairs does not excuse the ensuing collision."). Thus, courts excuse a party's failure to comprehend a contract's terms only in rare cases. See, e.g., Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable."); In American Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537-39 (5th Cir. 2003) (excusing a party who had relied upon a misrepresentation in signing a contract, but only because he was blind and therefore justified in relying upon the misrepresentation).

Here, Plaintiff essentially asks the Court to create an exception to the objective theory of contract formation based on a party's ignorance. Plaintiff is not claiming fraud. She is not alleging that Jenny Craig misrepresented the contents of the Offer Letter. Nor is there evidence that Plaintiff asked for additional time to review its contents and/or that Jenny Craig denied such request.[3] In the same vein, there is no indication that Jenny Craig tried to hide the arbitration clause. To the contrary, it was the longest paragraph of the three (3) page agreement and it included the only italicized provision contained therein, stating, in no uncertain terms: "You and the Company understand and agree that they are both waiving any right to a jury trial based on these claims." (Guglielmo Aff., Ex. A). It was Plaintiff's obligation to ensure that she understood the implications of Pargraph H

---

[3] To the contrary, Plaintiff's supervisor has certified that "[h]ad Plaintiff made a request for additional time to review the Offer Letter or to consult with someone regarding it, Jenny Craig would have agreed to this request." (Stuller Aff., ¶ 7).

before signing the Offer Letter. See, e.g., Morales, 541 F.3d at 223 ("It was Morales' obligation to ensure he understood the Agreement before signing."). Plaintiff's signature manifested her assent to the entire Offer Letter, and she is bound by the arbitration clause contained therein. See id. Accordingly, this Court holds that Defendant has met its burden of demonstrating that a valid agreement to arbitrate was made.

      **B.**     **Whether the Dispute is Within the Scope of the Agreement**

Once a court determines that a valid arbitration agreement exists, there is a presumption of arbitrability such that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 526 (3d Cir. 2009) (quotation omitted). "[A]mbiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989).

In opposing Defendant's motion to compel, Plaintiff disputes whether the claims asserted in her Complaint fall within the scope of the arbitration clause contained in the Offer Letter. In particular, Plaintiff argues that: (1) the waiver excludes common law claims, and (2) Paragraph H fails to mention claims brought pursuant to the Law Against Discrimination. Based on the reasons that follow, the Court finds that Plaintiff is bound to arbitrate the present dispute with Defendant.

Paragraph H provides, in pertinent part, that "[y]ou and the Company agree that if . . . any . . . disputes arise in connection with . . . your employment or termination of your employment, any such disputes shall be settled exclusively by arbitration in the City of San Diego . . . ." (Guglielmo Aff., Ex. A). This provision requires arbitration of any disputes arising out of Plaintiff's

employment (or termination of employment) with Jenny Craig. Plaintiff's dispute clearly arises out of her employment (or the termination of employment) with Jenny Craig. See Compl., ¶ 49 ("Jenny Craig, Inc. discriminated against the plaintiff . . . by terminating her employment as a result of her hiring of Mark Barksdale, a male, into a previously all-female organization."); ¶ 55 ("Jenny Craig took reprisals against the plaintiff . . . for having aided or encouraged Barksdale in the exercise . . . . of his right to employment and to be free from a hostile work environment"); ¶¶ 61-62 ("Jenny Craig used the recordings of Pauline Thomas . . . in connection with the termination of plaintiff's employment . . . . In doing so, defendant Jenny Craig violated plaintiff's rights under the public policy of the State of New Jersey"); ¶ 66 ("Jenny Craig violated the public policy of the State of New Jersey in its conduct against the plaintiff . . . as a result of her efforts in connection with the hiring and employment of a male"); ¶ 70 ("By procuring . . . the use of surreptitious intercepts of oral communications . . . Jenny Craig invaded the plaintiff's privacy"); and ¶ 73 ("At the time of her termination, Pauline Thomas was 53 years old and thus was protected against unlawful age discrimination . . . . The plaintiff was replaced by a substantially younger person. As a result of defendants' actions, plaintiff sustained damages."). Although Paragraph H goes on to list examples of types of claims which fall within the scope of the clause, this list is not exhaustive. See Guglielmo Aff., Ex. A ("This arbitration agreement includes, but is not limited to, any claim based on state or federal laws regarding: age, sex, pregnancy, race, color, national origin, marital status, religion, veteran status, disability, sexual orientation, medical condition, or other anti-discrimination or no-retaliation laws, including, without limitation, Title VII, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Equal Pay Act, and the California Fair Employment and Housing Act, all as amended.") (emphasis added). Thus, by assenting to the terms

of the Offer Letter, Plaintiff agreed to arbitrate the claims asserted in her Complaint inasmuch as such claims arise out of her employment (or termination of employment) with Jenny Craig. Plaintiff has given the Court no legal basis on which to find otherwise.[4]

## II.     Enforceability of Agreement to Arbitrate

Although the Court has determined that the parties entered into a valid agreement to arbitrate by mutually agreeing to the Letter Offer and that the claims asserted by Plaintiff fall within the scope of the arbitration provision contained in Paragraph H therein, Plaintiff argues that Defendant's motion to compel should nevertheless be denied because the arbitration provision is unconscionable and therefore unenforceable.  Arbitration provisions, although enforceable to the same extent as other contracts, "may be attacked under such grounds as exist at law or in equity for the revocation of a contract." Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008) (quotations omitted).  Thus, arbitration agreements have a strong presumption of validity, but will not be enforced if genuinely unconscionable. See, e.g., Muhammad v. County Bank of Rehoboth Beach Del., 189 N.J. 1, 12, 912 A.2d 88 (2006). To establish unconscionability, the burden of proof lies with Plaintiffs, who are challenging the arbitration provision. See, e.g., Harris v. Green Tree Financial Corp., 183 F.3d 173, 181 (3d Cir. 1999).

New Jersey courts analyze two factors in making determinations of unconscionability: (1) procedural unconscionability, or "unfairness in the formation of the contract," which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex

---

[4] To the extent Plaintiff argues that the provision "state . . . laws" contained in Paragraph H is ambiguous, Plaintiff cites to no legal authority limiting construction of such provision to state statutory claims. Moreover, Plaintiff concedes that "there is simply no way that language can be read as relating to only statutory discrimination claims." (Pl. Opp'n Br. at 10).

contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and (2) substantive unconscionability, which generally involves unfair or disproportionately one-sided terms. Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564-66, 800 A.2d 915 (2002).

### A.     Procedural Unconscionability

The gravamen of procedural unconscionability is whether one party lacked a meaningful choice in entering the agreement. See, e.g., Lucey v. FedEx Ground Package Sys., Inc., No. 06-3738, 2007 WL 3052997, *4 (D.N.J. Oct. 18, 2007), aff'd in part, 305 F. Appx. 875 (3d Cir. 2009). Plaintiff claims the Offer Letter and, in particular, Paragraph H contained therein, is procedurally unconscionable for two reasons: (1) she was not given time to read the agreement or informed that it would result in a waiver of her rights, and (2) enforcement of the arbitration provision would be unfair because the disparity in bargaining power between the parties resulted in a situation where she lacked the ability to negotiate a modification of its terms.

Plaintiff's second argument is, in essence, a claim that the Offer Letter is a "contract of adhesion." That term is commonly applied to agreements that are "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Muhammad, 912 A.2d at 96 (quotations omitted). Such agreements "necessarily involve indicia of procedural unconscionability," but "[t]he determination that a contract is one of adhesion . . . is the beginning, not the end, of the inquiry into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations." Id. at 96-97 (quotations and citations omitted). Rather, a court evaluating whether a contract of adhesion is procedurally unconscionable must look "not only to the take-it-or-leave-it

nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract." Id. at 97.

Even assuming, arguendo, that the Letter Offer is a contract of adhesion, the mere fact that a contract is a "contract of adhesion," does not, alone, render it procedurally unconscionable. See, e.g., Gras v. Assocs. First Capital Corp., 346 N.J. Super. 42, 48 (App. Div. 2001) ("The finding of an adhesive contract is not dispositive of the issue of enforceability." (internal citation omitted)). Evidence contained in the record confirms that Plaintiff is a high school graduate who worked in a corporate environment for over ten (10) years prior to joining Jenny Craig. (Thomas Cert., ¶¶ 12-13). Plaintiff also worked as a real estate agent for two (2) years prior to joining Jenny Craig. (Id.). Therefore, Plaintiff should have had no problem reading and/or understanding the terms of the document. Doing so would have taken no more than several minutes. Although she claims that her supervisor, who presented her with the Offer Letter, was "hurried," Plaintiff has presented no evidence that she attempted to read the document and was precluded from doing so. (Id., ¶ 8). By contrast, Plaintiff's supervisor has certified that she does not recall Plaintiff asking for any additional time to read over the contents of the Offer Letter and that, had Plaintiff done so, "Jenny Craig would have agreed to this request." (Stuller Aff., ¶ 7). Similarly, Plaintiff has presented no evidence that (a) she attempted to but was precluded from negotiating the terms of the Offer Letter, (b) she could not have found another job, or (c) she could not have remained in her previous position as a weight loss counselor at Jenny Craig. Thus, Plaintiff has presented no evidence that her bargaining position was so disadvantaged – financially or otherwise – so as to rob her of any meaningful choice in accepting the terms of the Offer Letter. See generally Gilmer v. Interstate/Johnson Lane Corp., 500

U.S. 20, 33 (1991) ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."),

Moreover, the Offer Letter, and in particular, Paragraph H contained therein, lacks the indicia of procedural unconscionability necessary to invalidate an adhesion contract. The contract's terms were neither hidden nor so complex that Plaintiff could not have reasonably understood them. In light of the foregoing, the Court finds that the Offer Letter, and in particular, Paragraph H contained therein, is not procedurally unconscionable

### B. Substantive Unconscionability

"Substantive unconscionability" is found where the arbitration agreement does not apply to each party equally. See, e.g., Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 565 (Ch. Div. 2002). Plaintiff argues that the Offer Letter, and in particular, Paragraph H contained therein, is substantively unconscionable inasmuch as Paragraph H required arbitration proceedings to be brought in San Diego, California, where Defendant is based. In this regard, Plaintiff argues that "enforcement of that provision would make it effectively impossible for Pauline Thomas and others like her to enforce their rights at all. Certainly, few litigants from the East Coast would have the time, resources, or financial wherewithal to fight any legal battle in San Diego, in court or in arbitration," thereby rendering the agreement unfair.

As a preliminary matter, the Offer Letter requires both Plaintiff and Jenny Craig to arbitrate claims arising out of Plaintiff's employment (or termination of employment with) Jenny Craig; thus, the arbitration provision applies to both parties equally. Second, Plaintiff cites to no legal authority in support of the proposition that requiring that arbitration proceedings be brought in a particular state renders the arbitration clause substantively unconscionable and, therefore, unenforceable. In

any event, Jenny Craig has agreed to waive the requirement that the arbitration be conducted in California,[5] thereby rendering this argument moot. Third, Plaintiff has failed to submit any evidence suggesting that the cost of arbitration would effectively preclude her from vindicating her state and/or federal rights in the arbitral forum. See, e.g., Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000) ("Similarly, we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. Randolph did not meet that burden."). Accordingly, the Court finds that the Offer Letter is not substantively unconscionable

## CONCLUSION

Based on the reasons set forth above, the Court finds that each of Plaintiff's claims – which all relate to her employment (or termination of employment) with Jenny Craig – fall within the scope of the arbitration provision contained in the parties' agreement. Therefore, the Court compels arbitration of all claims asserted in Plaintiff's Complaint. For purposes of judicial economy, the Court will administratively terminate this matter pending arbitration.[6]

An appropriate Order accompanies this Opinion.

DATE: August 4, 2010

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE

---

[5] In this regard, Jenny Craig represents that it is willing and prepared to arbitrate the matter in New Jersey. See Def. Br. at 2

[6] In doing so, the Court notes that all claims asserted in Plaintiff's Complaint have been found subject to arbitration and that none of the parties have requested that the matter be stayed pending arbitration. See, e.g., Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").